# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| REINER SCHNEIDER, ANJA SCHNEIDER, TORSTEN TEICHMANN, SIMONE TEICHMANN, and VOLKMAR BOEHM, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIE LEO STAGGS and JACQUELINE STAGGS, <br><br> Defendants <br><br> and <br><br> ACE INSURANCE COMPANY, <br><br> Interested Party. | Case No. 1:19-cv-00070 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE HOLMES |

## **MEMORANDUM**

Pending before the Court are cross motions for summary judgment by Plaintiffs and ACE Insurance Company as to Count II, Declaratory Relief. (Doc. Nos. 35 and 45). The parties each filed a response to the motion (Doc. Nos. 43 and 50) and statements of facts and responses thereto (Doc. Nos. 37, 44, 47, 51).

For the reasons stated below, Plaintiffs' Partial Motion for Summary Judgment (Doc. No. 35) is DENIED, and ACE Insurance Company's Motion for Summary Judgment (Doc. No. 45) is GRANTED.

## I.   BACKGROUND

While driving a rental vehicle in Tennessee, on September 10, 2018, Plaintiffs Torsten Teichmann, Simone Teichmann, Reiner Schneider, Anja Schneider, and Volkmar Boehm were hit

by a pickup truck operated by Defendant Willie Leo Staggs. (Doc. No. 44 at ¶ 8). Defendant admits fault for the collision. (*See* Answer, Doc. No. 25). Plaintiffs claim the accident caused significant and permanent injuries to all five Plaintiffs. (Doc. No. 44 at ¶ 9). Plaintiffs claim damages for personal injury in excess of $1 million. (*Id*. at ¶ 12).

The current dispute is one of insurance coverage – specifically, whether the underinsured motorist coverage purchased as part of the rental agreement has a limit of $100,000 or $1 million. The insurance coverage is underwritten by Ace American Insurance Company ("ACE"). ACE and Plaintiffs have each filed motions for summary judgment seeking declaratory judgment on the amount of underinsured motorist coverage afforded by the policy.

Torsten Teichmann rented a car at the Chicago O'Hare International Airport. (*See* Doc. No. 35-1). The Rental Agreement included the purchase of "Extended Protection" and referred the renter to the Rental Agreement Jacket and the applicable product brochures for details. (*Id*.) The Agreement states:

> **I HAVE ACCEPTED ONE OR MORE OPTIONAL INSURANCE PRODUCTS AS PART OF THIS RENTAL AGREEMENT. THESE PRODUCTS ARE DESCRIBED IN THE RENTAL AGREEMENT JACKET AND IN THE APPLICABLE OPTIONAL PRODUCT BROCHURE(S). I ACKNOWLEDGE HAVING RECEIVED A COPY OF THESE DOCUMENTS, WHICH SUMMARIZE THE MATERIAL TERMS, CONDITIONS, AND RESTRICTIONS APPLICABLE TO SUCH OPTIONAL INSURANCE PRODUCTS AND THE PROCESS TO FILE A CLAIM. I UNDERSTAND THAT THESE INSURANCE PRODUCTS MAY DUPLICATE COVERAGE ALREADY PROVIDED BY MY OWN INSURANCE POLICIES. THE PURCHASE OF ANY OPTIONAL PRODUCT IS NOT REQUIRED TO RENT A VEHICLE.**

*Id*.

In a second area of the agreement, just above the line for the renter signature, it states: "I THE 'RENTER' SIGNING BELOW, HAVE READ AND AGREE TO THE TERMS AND

CONDITIONS IN THE RENTAL AGREEMENT JACKET." (*Id.*) It is undisputed that Plaintiffs were provided a copy of the Rental Agreement and the Rental Agreement Jacket. (Doc. No. 44 at ¶ 5). Teichmann signed the agreement as "Renter" and Plaintiffs Reiner Schneider and Volkmar Boehm signed as "Additional Authorized Drivers." (Doc. No. 35-1).

The Rental Agreement Jacket describes the Extended Protection as follows:

> **10. <u>Uninsured/Underinsured Motorist Protection</u>**. Except as required by law, Owner and its affiliates do not provide … Uninsured/Underinsured Motorist Protect (UM/UIM) through this Agreement. If Owner or its affiliates is required by law to provide … UM/UIM, Renter expressly selects such protection to the minimum limits within the maximum deductible and expressly waives and rejects … UM/UIM limits in excess of the minimum limits required by law.
>
> \*\*\*
>
> **18. <u>Other Optional Protection Products</u>, THE PURCHASE OF ANY OF THE FOLLOWING PRODUCTS IS OPTIONAL AND NOT REQUIRED IN ORDER TO RENT A VEHICLE. EACH OF THE FOLLOWING IS A SUMMARY ONLY AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE APPLICABLE POLICIES DESCRIBED BELOW. UPON REQUEST, A COPY OF THE POLICY IS AVAILABLE FOR REVIEW …**
>
> **A. Extended Protection (EP)** (Where available): If EP is selected and paid for, Owner provides Renter or an AAD with third party liability insurance in an amount equal to the minimum financial responsibility limits applicable to the vehicle (the Primary Protection). EP also provides additional third party liability protection, through an excess liability policy, with limits of the difference between the Primary Protection and a combined single limit of $1 million per accident for bodily injury and/or property damage to others arising out of the use or operation of the Owner rental vehicle by Renter or an ADD, subject to the terms and conditions of the policy. EP includes UM/UIM coverage for bodily injury and property damage in an amount equal to the minimum financial responsibility limits applicable to the Vehicle (the Primary Protection), and additional coverage, through an excess liability policy, with limits for the difference between the statutory minimum underlying limits and $100,000 per accident … or state mandated UM/UIM limit, whichever is greater. OWNER AND RENTER REJECT ANY ADDITIONAL UM/UIM COVERAGE TO THE EXTENT PERMITTED BY LAW…A benefit summary for EP is contained within the applicable brochure …

3

(Doc. No. 35-1 at 18) (emphasis in original).

The insurance policy is titled "Excess Rental Liability Policy" and names Enterprise Holdings, Inc. as the named insured. (*See* Doc. No. 45-3). The Policy insures persons renting an automobile from the named insured who have elected coverage for an additional daily charge as shown in the Rental Agreement. The Policy set limits of liability for uninsured and underinsured motorist coverage as "the difference between the minimum limits required by statute to be provided by the **Underlying Protection** and a maximum of $100,000 each accident." (*Id*. at 27 (emphasis in original); *see also* Doc No. 48 (showing election of coverage)).

Plaintiffs' original Complaint, (Doc. No. 1), named as Defendants Willie Staggs, the driver of the vehicle, and Jacqueline Staggs, the vehicles owner. Plaintiffs amended the Complaint, (Doc. No. 24), to add a claim for declaratory relief against ACE Insurance Company as an interested party. Plaintiffs seek a declaratory judgment that ACE Insurance Company is liable to Plaintiffs for up to $1,000,000 in underinsured motorist coverage. Plaintiffs and ACE have filed cross motions for summary judgment on the claim for declaratory relief. (Doc. Nos. 35 and 45).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* In evaluating a motion for summary judgment, the court views

4

the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003).

### III. ANALYSIS

The Rental Agreement provides that the applicable law is that of the state where the vehicle was rented, in this case Illinois, and the parties agree that Illinois law applies to the issue of insurance coverage. (Doc. No. 35-1, Ex. 2 at ¶ 22).

Plaintiffs contend the Illinois Insurance Code, 215 ILCS 5/143a-2 (West 2004), provision which requires coverage for uninsured/underinsured motorist coverage in an amount equal to the bodily injury liability limits unless that level of coverage is rejected in writing, applies here. Plaintiffs argue that they did not make a written request for a lower coverage limit and that the bodily injury coverage limit of $1,000,000 therefore applies. ACE contests the applicability of the statutory provision to the insurance agreement, on grounds that the Policy provides liability coverage on an excess basis, which is excepted from the statutory requirement. In the alternative, ACE argues that if the statute does apply, its requirements were met when the named party – the car rental company – expressly elected the UM/UIM coverage limits in writing.

Statutory interpretation under Illinois law follows the near universal rule that Courts are to give effect to the plain language of the statute. *Lee v. John Deere Inc. Co*., 802 N.E.2d 774, 777 (Ill. 2003). "When the statute's language is clear, it will be given effect without resort of other airs of statutory construction." *Id*. (citing *Petersen v. Wallach*, 764 N.E.2d 19 (Ill. 2002)). Similarly, when interpreting an insurance policy, the Court bases its analysis on "the plain language of the policy and the plain language of the [Illinois] Insurance Code of 1937 as it existed

at the time the policy was written." *Cincinnati Ins. Co. v. Miller*, 546 N.E.2d 700, 703 (Ill. App. Ct. 1989) (citing *Price v. State Farm Mut. Auto. Ins*., 452 N.E.2d 49, 52 (Ill. App. Ct. 1983)).

The Illinois Insurance Code requires insurance companies to provide applicants with a brief description of uninsured motorist coverage and advise them of their right to reject coverage above the minimum required amount. The statute provides that uninsured motorist coverage must be equal to the bodily injury limits unless such coverage is rejected in writing by "any named insured or applicant." That election is binding on all persons insured under the policy. 215 ILCS 5/143a-2(1)-(2) (West 2004). This requirement, however, does not apply to insurers providing excess or umbrella policies. *Id*. at 5/143a-2(5). The relevant provision states:

> Insurers providing liability coverage on an excess or umbrella basis are neither required to provide, nor are they prohibited from offering or making available coverages conforming to this Section on a supplemental basis…

215 ILCS 5/143a-2(5).

The threshold question regarding the applicability of Section 5/143a-2(5) is whether the Policy at issue provides "liability coverage on an excess or umbrella basis." As the name implies, an excess policy is one that provides liability coverage in an amount greater than that provided by the insured's primary coverage. *Beck v. Budget Rent-A-Car*, 669 N.E.2d 1335, 1338 (Ill. App. Ct. 1996); *see also*, *Excess Insurance*, Black's Law Dictionary (10th ed. 2014) (an excess insurance policy is one that "indemnif[ies] against any loss that exceed the amount of coverage under another policy").

The documents submitted, namely the Policy and the description of the Policy in the Rental Agreement Jacket, indicate that the Policy provides liability coverage on an excess basis. The Policy is titled: "Excess Rental Liability Policy," (*see* Doc. No. 45-3), but the excess nature of the coverage is not limited to the descriptive document title. By the terms of the Policy, ACE provides

6

"Excess Liability Coverage," which requires ACE to "pay all sums in excess of those payable under the terms of the Underlying Protection." (Doc. No. 45-3 at 35, section I.A.). Uninsured/underinsured motorist coverage is delineated as follows: "If uninsured/underinsured motorist coverage is afforded by Underlying Protection, the Company will also pay all sums the Insured is legally entitled to recover as compensatory damages from the owner or driver of an Uninsured Motor Vehicle or Underinsured Motor Vehicle in excess of those payable under the terms of Underlying Protection." (*Id*. at 35, section I.B.). Under "Limits of Liability," the Policy declares, "This is excess insurance and only applies to those coverages for which Underlying Protection are shown in the Declarations of this Policy." (*Id*. at 36, section II.A.).

In addition, the summary of Policy coverage in the Rental Agreement Jacket, also describes the coverage as an excess liability policy: "EP includes UM/UIM coverage for bodily injury and property damage in an amount equal to the minimum financial responsibility limits applicable to the Vehicle (the Primary Protection), and *additional coverage*, through an *excess liability policy*, with limits for the difference between the statutory minimum underlying limits and $100,000 per accident." (Doc. No. 35-1 at 18).

Plaintiffs call ACE's titling the policy "Excess Rental Liability Policy" "crafty" and argue that the policy is not excluded from the requirements of Section 5/143a-2(1) because it falls within the category of "vehicle insurance" as defined in the Illinois Insurance Code. While the Court agrees that the ACE Policy appears to be vehicle insurance in that it provides "insurance against loss or liability resulting from or incident to the ownership, maintenance or use of any vehicle," this categorization does not preclude the Policy also being an excess policy.

Plaintiffs also cite C*ope v. State Farm Fire & Cas. Co*., 760 N.E.2d 1020, 1023 (Ill. Ct. App. 2001), to advance their argument that the Policy provides vehicle insurance, not excess

7

insurance, and therefore the exclusion does not apply. They contend that "an umbrella or true 'excess' policy [] provides coverage in excess or beyond automobile bodily injury coverage" and that in *Cope* the court expressly distinguishes "additional uninsured motorist coverage," which is governed by Section 143a-2, from an "umbrella policy," which falls outside the scope of the Illinois uninsured motorist laws. (See Doc. No. 50 at 6). Plaintiffs are correct. *Cope* distinguishes the two types of coverage, but the holding does not support Plaintiffs' contention that Section 143a-2 applies to the Policy at issue in this case.

In *Cope*, the plaintiff had an automobile liability policy with $100,000 in uninsured motorist coverage. The plaintiff also had an umbrella policy that provided up to $1 million in excess coverage. The umbrella policy provided excess coverage for several policies, including the automobile-liability coverage, but did not include excess coverage for uninsured motor vehicles. The court considered whether the policy was governed by Section 5/143-2 and held that the umbrella policy fell within the exclusion for excess and umbrella policies. *Cope*, 760 N.E. 2d at 1023 ("[T]he type of insurance coverage provided in an umbrella policy differs from that provided in automobile liability coverage and consequently falls outside the scope of Illinois uninsured-motorist laws.").

Plaintiffs' argument construes the holding as distinguishing the object of the coverage – i.e. excess vehicle insurance coverage versus an umbrella policy with multiple areas of coverage. This reading, however, is inconsistent with the facts of the case and the plain language of the statute. The excess policy at issue in *Cope* was an umbrella policy that included multiple areas of coverage, including excess coverage for automobile liability. Moreover, adoption of Plaintiffs' argument would require a result incompatible with the plain language of the statute – policies providing excess insurance coverage only for automobiles would be covered by the statute, while

8

policies that provide excess insurance coverage for additional areas would fall within the exclusion.

Plaintiffs have presented no compelling argument or evidence that the Policy is not exactly what it purports to be – a policy providing excess coverage above and beyond that of the primary coverage.[1] Plaintiffs' arguments that the excess nature of the Policy is merely a matter of labeling, are unsupported and unavailing. The plain language of the Policy document states that the Policy provides only excess insurance coverage and the Court has not cause to find otherwise.

The uninsured motorist provision Plaintiffs seek to apply here specifically excludes Policies that provide excess or umbrella coverage. 215 ILSC 5/143a-2(5). The Appellate Court of Illinois considered this question under circumstances similar to those presented in this case In *Beck v. Budget Rent-A-Car*, 669 N.E.2d 1335 (Ill. App. Ct. 1996).[2] The court determined that, because primary liability coverage existed in the form of a certificate of self-insurance provided by the rental companies, the supplemental insurance purchased by the vehicle renter was necessarily "in the nature of excess or umbrella insurance." The court held that the policy, therefore, fell within the exclusion so that the requirements of Section 143a-2(1) did not apply. *Id*. at 1339-39.

Plaintiffs attempt to distinguish *Beck* on grounds that the insurance company was not a party to the case, and the court did not have a copy of the insurance policy or consider the Illinois Insurance Code definitions and categorizations of insurance products. Plaintiffs' assertion that the insurance company was not a party to the case appears to in error. According to the court's

---

[1] The parties appear to agree that the rental company is self-insured. (Doc. No. 50 at 3, n.2). According to the Policy, "underlying protection" includes "an approved program of self-insurance of substantially similar scope [to a standard automobile liability insurance policy]." (Doc. No. 45-3 at 38).

[2] The court in *Beck* considered a previous version of the statute, 215 ILCS 5/413a-2 (West 1994). Although the Illinois legislature amended the statute in 2004, the statutory exception in Section 143a-2(5) was not changed, and the Court finds the decisions addressing the earlier version applicable here.

9

opinion, the complaint included six counts against "Philadelphia Insurance Company [], the company that issued the supplemental insurance purchase by the plaintiff" and the court specifically addressed the potential liability of the insurance company under Section 5/143a-2. *Id*. at 1337. Plaintiffs also argue that *Beck* is distinguishable because the court did not have a copy of the insurance policy it determined was an excess policy. The significance of this fact is unclear. The *Beck* court found, based on the allegations in the complaint, that the policy at issue was an excess policy and was therefore exempt from the requirements of Section 5/143a-2(1). If anything, the evidence in this case is stronger than that in *Beck*. Here, the Court has more evidence that the court in *Beck* and need not rely solely on deductive processes conclude that the Policy provides liability insurance on an excess basis. This makes the outcome more reliable, not less so. Finally, Plaintiffs' argument that *Beck* fails to reference the Illinois Insurance Code definitions and categorizations of insurance products is groundless for the reasons discussed above.

In sum, the Court finds that the ACE Policy is a policy providing excess liability coverage. Therefore, the Policy is exempt from the requirements of Section 5/143a-2(1) and (2). Because the Court finds the Policy at issue is exempt from the requirements of Section 5/143a-2(1) and (2), the Court will not consider ACE's alternative argument that it has, in fact, complied with these provisions of the Illinois Insurance Code by obtaining a signed waiver from the car rental agency.

## IV.     CONCLUSION

For the reasons stated, summary judgment is granted in favor of ACE American Insurance Company on Count II.  ACE's Motion for Summary Judgment (Doc. No. 45) is **GRANTED** and Plaintiffs' Motion for Summary Judgment (Doc. No. 35) is **DENIED**.  An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE